Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
800 Wilshire Blvd., Suite 1050
Los Angeles, California  90017
Telephone: (213) 816-1700
Facsimile: (213) 816-1706
Email: Michael@thefreedmanfirm.com

Attorney for Claimant
MICHAEL MAGEE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 2:21-CV-06968-RGK-MAR |
|---|---|
| Plaintiff, | **CLAIMANT MICHAEL MAGEE'S OPPOSITION TO PLAINTIFF USA'S MOTION FOR AN ORDER TO STAY THIS CIVIL FORFEITURE PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| $305,000 IN U.S. CURRENCY, | |
| Defendant. | Date:  February 22, 2022<br>Time:  9:00 a.m.<br>Courtroom: 850, Hon. R. Gary Klausner |

Claimant Michael Magee ("Claimant"), by and through his counsel of record, hereby submits his Opposition to Plaintiff United States of America's Motion for an Order To Stay This Civil Forfeiture Proceeding.  Claimant's Opposition is based upon the attached memorandum of points and authorities, all pleadings and papers on file in this action, and such further matters as may be presented at any hearing on this Motion, and matters of which the Court may take notice.

Dated:  February 1, 2022          Respectfully submitted,

                                  /s/ Michael G. Freedman
                                  Michael G. Freedman
                                  Attorney for Claimant

MICHAEL MAGEE'S OPPOSITION TO MOTION TO STAY

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

The government unlawfully seized claimant's property nearly a year ago in March 2021 at U.S. Private Vaults ("USPV"). The warrant required the government to notify claimant so he could have his property returned, but the government instead seeks to forfeit that property through this case. The government's forfeiture case, however, lacks probable cause and is premised on unlawfully obtained evidence that should be suppressed. Rather than allow claimant to proceed with litigation of these important issues so he can have his property returned, the government now compounds the unfairness of this case by seeking to stay the forfeiture case. The court should deny the government's motion for a stay for several reasons.

The government claims that allowing the forfeiture case to proceed would adversely affect a criminal investigation, but this claim is insufficient to meet the governing standard to justify a stay. No discovery has yet been served, so the government's concern is nothing more than general speculation, which is insufficient to justify a stay. Equally speculative is the government's criminal investigation because there is no indication claimant was under investigation until the government unlawfully seized his property. That unlawful seizure taints the whole investigation, and it would be unfair to prevent claimant from being allowed to proceed to challenge the forfeiture case and to seek the return of his unlawfully seized property.[1]

---

[1] As the government notes, it filed similar motions in four cases: *United States of America v. $600,980.00 in U.S. Currency; Claimant Mitchell Magee*, Case No. 2:21-cv-06965-RGK-MAR; *United States of America v. $399,000.00 in U.S. Currency, et al.; Claimant Derrick Polk*, Case No. 2:21-cv-06966-RGK-MAR; *United States of America v. $341,500.00 in U.S. Currency, et al.; Claimant Ike Roberts*, Case No. 2:21-cv-06967-RGK-MAR; and *United States of America v. $305,000.00 in U.S Currency; Claimant Michael Magee*, Case No. 2:21-cv-06968-RGK-MAR. Similarly, claimant's opposition in this case is similar to the opposition filed by the claimants in the other three cases.

**STATEMENT OF FACTS**

On March 17, 2021, the government obtained a search warrant for USPV. *See In the Matter of the Search of 9182 W. Olympic Blvd., Beverly Hills, California*, 21-MJ-1302 (Mar. 17, 2021), *see* Dkt. 1-1, 21-cv-7192-SVW (attached as Ex. A). The warrant authorized the government to seize, *inter alia*:

> Nests of safety deposit boxes and keys, and documents and records referring or relating to them since 2019. This warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes. In seizing the nests of safety deposit boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes. Also in accordance with their written policies, agents shall inspect the contents of boxes in an effort to identify their owners in order to notify them so that they can claim their property.

*Id.*, Dkt. 1-1, Ex. A. pp. 11-12 (2:26-3:6 of Attachment B to warrant).

In the affidavit in support of the warrant, the FBI agent stated:

> Agents will follow their written inventory policies to protect their agencies from claims of theft or damage to the contents of the boxes, and to ensure that no hazardous items are unknowingly stored in a dangerous manner. Agents will attempt to notify the lawful owners of the property stored in the boxes how to claim their property, such as by posting that information on the internet or at USPV itself, or by contacting the owners directly. In order to notify the owners directly, agents will, in accordance with their policies regarding an unknown person's property, look for contact information

or something which identifies the owner. . . . The FBI policy regarding taking custody of an unknown person's property provides, in part, that agents "inspect the property property as necessary to identify the owner and preserve the property for safekeeping," The inspection "should extend no further than necessary to determine ownership."

*Id.* at Dkt. 1-1, Ex. A. pp. 103-104 (84:19-85:7 and fn. 40 of application).

Claimant's box at USPV was searched and the government seized the defendant currency from it. Complaint, Dkt. 1, at ¶¶ 5, 20. On August 30, 2021, the government filed the instant complaint seeking to forfeit the currency seized from claimant's box. *Id.* On July 15, 2021, the government executed another search warrant on claimant's residence on July 15, 2021 and seized two cars. Complaint, Dkt. 1 at ¶ 21. The government has filed a forfeiture complaint against these cars as well. *See* 22-cv-4-MCS-MRW.

## ARGUMENT

**A. Legal Standard**

In order to obtain a stay under 18 U.S.C. § 981(g)(1), the government must make an actual showing that civil discovery will adversely affect a criminal investigation. *United States v. All Funds on Deposit in SunTrust Account*, 456 F. Supp. 2d 64, 65 (D.D.C. 2006); *United States v. GAF Fin. Servs., Inc.*, 335 F. Supp. 2d 1371, 1373 (S.D. Fla. 2004); *United States v. Currency $716,502.44*, 2008 WL 5158291, at *4 (E.D. Mich. Dec. 5, 2008) ("Neither the fact that the Government would be subject to civil discovery, nor bare assertions of hardship by the Government, are enough to satisfy the statutory standard"), *citing United States v. All Funds ($357,311.68) Contained in Northern Trust Bank of Florida Account Number 7240001868*, 2004 WL 1834589, *2 (N.D. Tx. Aug. 10, 2004).

"There is no presumption that civil discovery, in itself, automatically creates an adverse effect on the government's related criminal proceeding." *All Funds*

3

MICHAEL MAGEE'S OPPOSITION TO MOTION TO STAY

($357,311.68), citing *United States v. All Funds on Deposit in Business Money Market Account No. 028–942059–66 ("All Funds—New York")*, 319 F.Supp.2d 290, 294 (E.D.N.Y.2004) (granting a stay after reviewing a government submission that "demonstrated that allowing civil discovery to proceed will impede the criminal investigation and prosecution"); *United States v. All Funds Deposited in Account No. 200008524845, First Union National Bank ("All Funds—Wyoming")*, 162 F. Supp. 2d 1325, 1331–33 (D.Wyo. 2001) (granting a stay after reviewing the claimant's existing discovery requests and the government's *ex parte* submissions).

Where the government speaks in generalizations and broad terms and fails to relate them to any particular aspect of a criminal investigation, or provide anything more than conclusory statements or speculation to support its claim that civil discovery will jeopardize an investigation, a motion to stay should be denied. *United States v. One J.P. Morgan Chase Bank Acct. No. XXXXXXXXXXX in amount of Seven Hundred Fifty Thousand Dollars ($750,000.00)*, 2006 WL 6562918, at *2 (W.D. Mich. Dec. 14, 2006), citing *GAF Fin. Servs., Inc.*, 335 F.Supp.2d at 1373.

### B. The Government Cannot Meet the Standard for a Stay

#### 1. There Is No Showing Discovery Would Have an Adverse Effect

The government cannot meet this governing standard in this case. The government has not made a sufficient showing that civil discovery would adversely affect a criminal investigation. Neither party has yet attempted to even serve any discovery in this matter, so it is premature and mere speculation for the government to claim any discovery would adversely affect a criminal investigation. Because there is no specific discovery pending, the government cannot provide anything more than insufficient generalizations about the effect of discovery.

Here, as in *All Funds ($357,311.68)*:

> the Government's arguments do nothing more than

4

MICHAEL MAGEE'S OPPOSITION TO MOTION TO STAY

> speculate about how civil discovery will adversely affect its criminal investigation. Under either of the Government's theories, every civil forfeiture case with a related criminal investigation is entitled to a stay. Such speculative and conclusory theories undercut the requirement of section 981(g).

*All Funds ($357,311.68)*, 2004 WL 1834589, *2. Likewise, "the Government fails to point to any specific discovery request or abuse that has taken place, and makes no legitimate argument about the prospective ability of [Claimant] to engage in discovery that could compromise its related criminal investigation." *Id.* Nor has the government shown that civil discovery will compromise the identity of confidential informants or cooperating witnesses. *Id.*, citing *United States v. All Funds on Deposit in Any Account at Certain Financial Institutions Held in the Names of Certain Individuals*, 767 F. Supp. 36, 42 (E.D.N.Y.1991); *All Funds—Wyoming*, 162 F. Supp. 2d at 1331–33; *All Funds—New York*, 319 F. Supp. 2d at 294. Nor has the government shown that claimant might abuse the discovery process with overbroad discovery requests. *Id.*, citing *United States v. Funds Held in the Names or For the Benefit of Wetterer*, 138 F.R.D. 356, 360–61 (E.D.N.Y.1991).

### 2. The Claimed Criminal Investigation Is Dubious and Speculative

Nor is the government's claim regarding the criminal investigation sufficient. The government has made an in-camera submission in this regard, but claimant objects to that submission and urges the Court not to consider it. Furthermore, even if the submission is considered, any purported criminal investigation is factually and legally dubious. There is no indication that claimant was under investigation before his vault was seized. Claimant had nothing to hide as presumably it was his name on his vault that allowed the government to identify him in the first place. The only basis for the government to claim it is investigating

claimant is because he had a box at USPV. This is legally improper because, under the warrant for USPV, the government was only supposed to use the information from the boxes to identify the owners of the boxes to notify them how to claim their property, not to then investigate them. Any criminal investigation thus violates the warrant and is legally flawed. The fact that a follow-up warrant was executed in July does not change this legal deficiency because that warrant is flawed for the same reason – it was improperly based on the tainted search and seizure of USPV.

### 3. The Government's Fifth Amendment Concern Is Insufficient

It also is not sufficient that the government is concerned claimant may assert his Fifth Amendment privilege against self-incrimination. *United States v. Real Prop. & Premises*, 657 F. Supp. 2d 1060, 1063–64 (D. Minn. 2009)(rejecting as "not enough" the government's anticipation that claimant would assert the Fifth Amendment); *see also United States v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 214–15 (D.D.C. 2014), citing *SEC v. Dresser Indus.*, 628 F.2d 1368, 1376 (D.C.Cir.1980) (affirming the district court's refusal to stay a proceeding at the request of a person under investigation because there had been no indictment or threat to the person's Fifth Amendment privilege, and because Federal Rule of Criminal Procedure 16(b) "ha[d] not come into effect" nor had the subpoena required the person to reveal the basis of his defense).

### 4. A Protective Order Would Address Any Valid Concerns

Even if these concerns were valid, the Court need not issue a blanket stay but could instead issue a protective order, as required by Subsection (3), to protect sensitive information relevant to the criminal case. *United States v. Contents of Accts.*, 2010 WL 2682397, at *2 (W.D. Ky. July 2, 2010). *Contents of Accts.* is instructive. In that case, the court noted that:

> Defendants are already on notice of numerous issues the
> government is investigating, based on the property seizures,

>the filing of the civil complaint and the unsealing of Black's affidavit. The government has already lost the element of surprise by pursuing the case the way it has. Additionally, there are several areas of inquiry the Defendants could pursue that would produce information relevant to their defense that is wholly unrelated to sensitive information the government wishes to protect. . . . The government made the calculated decision to seize what Defendants characterize as substantially all of their business and personal assets—including their cars and money to pay their mortgage—prior to an indictment or the filing of a civil complaint. . . Now, the government seeks to stop the train it set in motion by requesting a stay of civil discovery. In essence, it takes advantage of the civil forfeiture procedures, then tries to halt the civil suit when it becomes inconvenient. This might be more acceptable where Defendants retained the property for the pendency of the action, but it seems inequitable and unreasonable to apply a blanket stay where the government retains the property.

*Id.*

  The same is true here and a stay would be particularly unfair in this unique case. The government set in motion a series of unlawful searches and seizures at USPV, which continued at claimant's home. The government has seized a tremendous amount of claimant's assets, but now seeks to stop claimant from seeking their return under the guise of a baseless claim of a criminal investigation. If the government believes the criminal investigation is more important than the forfeiture case, then it should not have filed the forfeiture case before it was ready to proceed. If it insists on going forward with the criminal investigation, it should be required to dismiss the forfeiture case and return claimant's property. To issue

a stay would unfairly penalize claimant for a problem entirely of the government's own creation.

### C. A Stay Would Be Fundamentally Unfair In This Case

Claimant expects to bring numerous meritorious challenges in the forfeiture case, and the government should not be entitled to delay claimant from doing so when it has not met the governing standard to obtain a stay.

#### 1. There Is No Probable Cause for Forfeiture

First, the government's forfeiture case is not supported by probable cause. "Because the government must swear that probable cause exists at the time it institutes the action, and that specific facts exist to support probable cause, it is entirely reasonable to conclude that probable cause must actually exist when the government brings forfeiture proceedings." *United States v. $191,910.00 in United States Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994). For the government to meet its burden, it must demonstrate that it had "reasonable grounds to believe that the [money] was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion." *United States v. $22,474.00 in U.S. Currency*, 246 F.3d 1212, 1215-16 (9th Cir. 2001), quoting *United States v. $30,060.00 in U.S. Currency*, 39 F.3d 1039, 1041 (9th Cir. 1994) (brackets in original) (citation and internal quotation marks omitted); *United States v. Dickerson*, 873 F.2d 1181, 1184 (9th Cir. 1988).

Here, the government's forfeiture case fails to meet this standard because it relies primarily on general allegations regarding USPV that have nothing to do with claimant. This guilt-by-association fails to demonstrate probable cause for the forfeiture of claimant's funds. Nor is it sufficient that the government relies on claimant's criminal history generally without providing any connection between these past convictions and the funds seized in this case. *U.S. v. $10,700.00*, 258 F.3d 215, 223-24 (3d Cir. 2001) ("the government has not presented any evidence whatsoever from which it could be inferred that claimants were involved in any

drug exchange at or around the time that the government instituted forfeiture proceedings.")  The government lacks probable cause from the start.  It should not be allowed to delay claimant from litigating this issue under the guise of a baseless criminal investigation.  And it would be particularly unfair to give the government additional time in a case where its lack of probable cause is already clear.  Moreover, the government may not later attempt to bolster its deficient probable cause showing with additional facts.

      Additionally, the government relies heavily on the alleged canine alert, but the Ninth Circuit has repeatedly rejected the government's reliance on alerts by drug-sniffing dogs, giving the factor little weight in light of the widespread contamination of money with drug residue in the Los Angeles area. *$49,576.00 U.S. Currency*, 116 F.3d 425, 427 (9th Cir. 1997); *citing $30,060.00 in U.S. Currency*, 39 F.3d at 1041-42 (noting that the Ninth Circuit has only upheld probable cause findings in cases involving a positive canine alert when alert was combined with other credible evidence clearly connecting the money to drugs) (citing numerous cases); *see also United States v. $42,500 U.S. Currency*, 283 F.3d 977, 982 (9th Cir. 2002) (a sophisticated canine alert is where a canine "reacts only to ephemeral by-products of narcotics and not to commonly circulated currency"); *U.S. v. $100,120.00*, 730 F.3d 711, 720 (7th Cir. 2013); *U.S. v. Esteban*, 283 F. Supp. 3d 1115, 1134-38 (D. Utah 2017).

      Indeed, in this case the alleged canine alert is particularly deficient to show probable cause as to claimant's funds because the government's theory is that USPV is permeated by narcotics proceeds, especially marijuana, so the government cannot demonstrate that it was defendant's funds in particular that caused the canine to alert or that the alert is of any probative value.  *See*, *e.g.*, *People v. McKnight*, 446 P.3d 397, 408 (Colo. 2019) (explaining that dogs trained to alert to marijuana, among other drugs, have no probative value in Colorado (or other states that have legalized marijuana).

**2. Claimant Should Be Allowed To File a Suppression Motion**

In addition to failing to demonstrate probable cause, the government's case is also susceptible to a motion to suppress. Supplemental Rules for Admiralty Rule G (8) (a) specifies that a claimant can file a motion to suppress use of the property as evidence. And the exclusionary rule applies to all fruits of the search in forfeitures and to hold otherwise "would merely reward the government for carrying out an illegal search or seizure". *U.S. v. $493,850.00 in U.S. Currency* 518 F.3d 1159, 1165 (9th Cir. 2008). For the reasons discussed above, the initial USPV search warrant lacked probable cause as to claimant and the warrant did not allow for the seizure of claimant's property. This Court has already recognized the questionable basis for the government's conduct in this case. *See Snitko et al. v. U.S.*, 21-CV-4405-RGK, Dkt. 60 ("the Court determines that the facts and the law clearly favor Ruiz as to his Fourth Amendment claim"). Claimant should be allowed to litigate this issue in this case and should not be prevented from doing so by a stay. Likewise, the follow-up warrant fares no better because it stemmed from the first, unlawful search and seizure. The entire case suffers from this unlawful foundation, which a stay would perpetuate by unfairly denying claimant the right to challenge the case and seek the return of his property.

**CONCLUSION**

For all the foregoing reasons, claimant respectfully requests that the Court deny the government's motion.

Dated: February 1, 2022              Respectfully submitted,

                                     */s/ Michael G. Freedman*

                                     Michael G. Freedman
                                     Attorney for Claimant